UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANTONIO VALLIN BRIDGES,

        Petitioner,

v.

MATT MCCAULEY,

        Respondent.

_____/

Case No. 1:25-cv-343

Honorable Maarten Vermaat

**<u>OPINION</u>**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.3.) Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases. The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any

procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding: the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1] The consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999).

After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.     Factual Allegations

Petitioner Antonio Vallin Bridges is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. On December 1, 2015, in the Ingham County Circuit Court, Petitioner pleaded guilty to three counts of false pretenses – $1,000.00 or more but less than $20,000, in violation of Mich. Comp. Laws § 750.218(4)(a), and admitted to being a habitual offender - third offense, Mich. Comp. Laws § 769.11. *Bridges v. Barrett*, No. 1:16-cv-1269 (W.D. Mich.) (Plea Tr., ECF No. 21-2, PageID.123–128.)[2] At the sentencing hearing held on December 16, 2015, the trial court

---

[2] The present petition is the latest § 2254 petition filed by Petitioner. Petitioner has previously filed numerous petitions challenging the fact or duration of the sentences imposed for the false-pretenses charges, as well as one prisoner civil rights complaint that also challenged the constitutional propriety of Petitioner's continued incarceration. Petitioner is not particularly forthcoming in his submissions in any single case; however, upon reading Petitioner's filings in all of the cases, one can put together a fairly complete chronology of the events that prompted each of Petitioner's petitions. The cases will be referenced herein as follows:

1. *Bridges v. Barrett*, No. 1:16-cv-1269 (W.D. Mich.) will be referenced as *Bridges I*;
2. *Bridges v. Harry*, No. 1:17-cv-287 (W.D. Mich.) will be referenced as *Bridges II*;
3. *Bridges v. Harry*, No. 1:17-cv-612 (W.D. Mich.) will be referenced as *Bridges III*;
4. *Bridges v. Michigan Parole Board*, No. 1:20-cv-612 (W.D. Mich.) will be referenced as *Bridges IV*; and
5. *Bridges v. Rewerts*, No. 1:20-cv-1130 (W.D. Mich.) will be referenced as *Bridges V*.

sentenced Petitioner to concurrent sentences of 2 ½ to 10 years with 138 days of credit. *Bridges I* (Sentencing Tr., ECF No. 21-3, PageID.150–151).

*Bridges I*, *Bridges II*, and *Bridges III* each attacked the original convictions and sentences. All three petitions were dismissed without prejudice because Petitioner failed to exhaust his state court remedies. Petitioner was paroled on January 30, 2018. *Bridges VI* (Compl., ECF No. 1, PageID.2).

Petitioner lasted less than a year on parole. In November of 2018, Petitioner was bound over to the Ingham County Circuit court on charges of resisting and obstructing an officer, as well as fourth-degree criminal sexual conduct. *See* https://courts.ingham.org/CourtRecordSearch/ (type "Bridges" for "Last Name," type "Antonio" for "First Name," enter March 30, 1973, as the "Date of Birth," select "Criminal/Traffic" for "Case Type," select "Search," then select the option for Case Number 18-001000-FH) (last visited Mar. 31, 2025). On June 6, 2019, those charges were dismissed in exchange for Petitioner's guilty plea to attempted resisting and obstructing a police officer. *See id.* The trial court sentenced Petitioner to one day in the Ingham County Jail; however, based on that guilty plea, Petitioner's parole was revoked on June 26, 2019. *Bridges VI*, (Pet'r's Mem., ECF No. 12, PageID.68.) Since that time, Petitioner has been denied parole several times.

---

Petitioner has also filed a civil rights complaint relating to alleged constitutional violations in connection with the denial of parole, *Bridges v. Michigan Parole Board Members*, No. 1:20-cv-1138 (W.D. Mich.), which shall be referenced herein as *Bridges VI*. Petitioner's first habeas petition filed to challenge parole revocation proceedings, *Bridges v. Rewerts*, No. 1:21-cv-558 (W.D. Mich.), shall be referenced as *Bridges VII*. The entirely duplicative petition that he filed shortly thereafter, *Bridges v. Michigan Parole Board et al.*, No. 1:21-cv-678 (W.D. Mich.), shall be referenced as *Bridges VIII*. The third petition filed to challenge the parole revocation proceedings, *Bridges v. Rewerts*, No. 1:21-cv-920 (W.D. Mich.), shall be referenced as *Bridges IX*. The fourth petition filed to challenge parole revocation proceedings, *Bridges v. Rewerts*, No. 1:21-cv-1059 (W.D. Mich), shall be referenced as *Bridges X*. The petition that Petitioner filed in January of 2025 to challenge the denial of parole, *Bridges v. Rewerts*, No. 1:25-cv-65 (W.D. Mich.), shall be referenced as *Bridges XI*.

Those denials form the basis for Petitioner's constitutional challenges in *Bridges IV*, *Bridges V*, *Bridges VI*, and *Bridges XI*. Each case has been dismissed.

On June 28, 2021, Petitioner filed the habeas corpus petition in *Bridges VII*, raising one ground for relief, which the Court paraphrases as follows:

> The parole board violated Petitioner's due process rights by revoking parole based on parole violation charges that were dismissed. The parole board deprived Petitioner of his protected liberty interest to remain on parole without due process by denying him the opportunity to prove that he did not commit the dismissed violations.

*Bridges VII* (Pet., ECF No. 1, PageID.3). Although Petitioner had previously attacked his convictions and multiple denials of parole, the *Bridges VII* petition was the first time he had attacked the constitutionality of the parole revocation proceedings. Thus, the *Bridges VII* petition was not second or successive to the petitions that preceded it. Petitioner had neither appealed the parole revocation nor pursued a habeas corpus petition to completion; thus, Petitioner had failed to exhaust his state court remedies. Petitioner asked the Court to consider and resolve the petition despite his failure to exhaust, but the Court declined, dismissing the petition without prejudice for Petitioner's failure to exhaust his state court remedies. *Bridges VII* (Op., ECF No. 8). Petitioner appealed, and the United States Court of Appeals for the Sixth Circuit denied his application for a certificate of appealability on March 1, 2022. *Id.* (6th Cir. Order, ECF No. 16).

Almost immediately after filing his notice of appeal in *Bridges VII*, Petitioner filed another petition raising the same claims, but bolstering his arguments regarding the futility of his state court remedies with additional facts. The facts were not based on intervening events; instead, they were simply additional facts regarding events that preceded his petition in *Bridges VII*. Specifically, Petitioner fixed a date to the filing of his habeas corpus petition in the Montcalm County Circuit Court—March 28, 2020—and revealed that he had also sought habeas corpus and/or mandamus relief in the Michigan Court of Appeals. *Bridges VIII* (Pet., ECF No. 1,

5

PageID.3–4.) The Montcalm County Circuit Court, however, had no record of Petitioner's habeas corpus petition, and the Michigan Court of Appeals showed Petitioner's actions in that court as open and pending. Thus, in the few days between the dismissal of *Bridges VII* and the filing of the *Bridges VIII* petition, there had been no events that would alter the conclusions of the Court that led to the dismissal of *Bridges VII*. Petitioner's state court remedies remained unexhausted, and he had identified no circumstances that warranted foregoing the exhaustion requirement. The Court dismissed *Bridges VIII* as duplicative.

At the end of October 2021, Petitioner filed *Bridges IX*, again challenging the parole revocation. The Court directed Petitioner to file an amended petition on the approved court form. Petitioner failed to comply, so the petition was dismissed.

Before *Bridges IX* was dismissed, Petitioner filed another § 2254 petition challenging the constitutionality of his parole revocation proceedings. *Bridges X* (Pet., ECF No. 1). The Court directed Petitioner to file an amended petition on the form, and Petitioner did so. The Court subsequently directed Petitioner to show cause why his petition should not be dismissed as untimely. *See id.* (Op. and Order, ECF Nos. 7, 8). Petitioner did not respond. Accordingly, in an order and judgment entered on February 28, 2022, the Court noted that it appeared that Petitioner had been released on parole and dismissed his petition with prejudice as untimely. *See id.* (Order and J., ECF Nos. 10, 11).

Petitioner was again not successful on parole. On October 6, 2022, he was arrested in Isabella County and charged with malicious destruction of property worth between $1,000 and $20,000, as well as malicious destruction of fire or police property. *See* Register of Actions, *People v. Bridges*, Case No. 2022-0000001280-FH (Isabella Cnty. Cir. Ct), *available at* https://micourt. courts.michigan.gov/case-search/court/C21 (type "Bridges" for "Last Name or Business," type

"Antonio" for "First Name," select "Search," then select the link for the only result to appear) (last visited Mar. 31, 2025). Petitioner pleaded guilty to both charges, and the court sentenced him to 1 year and 1 month to a maximum of 10 years for both offenses. *See id.*

The MDOC's Offender Tracking Information System (OTIS) indicates that Petitioner is currently incarcerated pursuant to the sentences imposed by the Isabella County Circuit Court, as well as on the sentences imposed by the Ingham County Circuit Court for the three false pretenses charges. *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=437651 (last visited Mar. 31, 2025). Thus, it appears that Petitioner's parole was revoked yet again as a result of his guilty pleas in Isabella County. OTIS indicates that Petitioner's earliest release date was March 21, 2024, and that his maximum discharge date is July 30, 2035. *Id.*

The Court received Petitioner's instant § 2254 petition on March 28, 2025. Petitioner used this Court's form for filing a § 2254 petition but, once again, he is not particularly forthcoming in his petition. Petitioner suggests that he has a "due process free standing liberty interest to be free from sex offender condition[s] when [he has not been] convicted of a sex offense." (Pet., ECF No. 1, PageID.2.) Petitioner contends that he has been denied parole due to the fact that he has not completed sex offender treatment. (*Id.*) In his brief supporting his petition, Petitioner avers that he "is now labeled a mental[ly] ill [deviant] convicted sex offender and required to be involuntar[ily] housed in a sex offender hospital." (Br. Supp. § 2254 Pet., ECF No. 2, PageID.6.) Petitioner suggests that he has been barred admission to sex offender treatment because he insists that he is innocent of committing a sex offense. (*Id.*) Petitioner seeks immediate release from confinement. (*Id.*, PageID.7.)

Petitioner also raised his due process arguments in a § 2254 petition filed around the same time as his § 1983 suit.

7

## II. Discussion

Section 2254, of Title 28, United States Code, authorizes "an application for writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Accordingly, until Petitioner has served his maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. Therefore, the Michigan Parole Board's failure or refusal to consider Petitioner for or grant him parole does not implicate a federal right. In the absence of a liberty interest, Petitioner cannot claim a violation of his procedural due process rights.

As set forth above, Petitioner suggests that he has a due process right to not be labeled as a sex offender and be required to complete sex offender treatment to obtain parole when he is not incarcerated for a sex offense. However, where prisoners do not have a protected liberty interest in parole, like in Michigan, a condition or voluntary prerequisite for parole cannot enjoy due process protection either, unless that condition or prerequisite is independently worthy of due process protection. *See Catanzaro v. Harry*, 848 F. Supp. 2d 780, 793-94 (W.D. Mich. 2012) ("Thus, the conditions of Plaintiff's parole[, including participation in a sex-offender treatment program,] implicated Plaintiff's right to due process only if they; (1) exceeded the sentence imposed on Plaintiff 'in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force,' *Sandin*, 515 U.S. at 484 (citing *Vitek v. Jones*, 445 U.S. 480 (1980)); or (2) imposed 'significant and atypical hardship in relation to the ordinary incidents of prison life.' *Id*.").

In *Catanzaro*, this Court concluded that a prisoner convicted of a sex offense was not deprived of due process where he was compelled to participate in sex-offender treatment as a condition of parole. The prisoner, Catanzaro, compared his plight to that of the plaintiff in *Vitek*:

> In *Vitek*, prison officials determined that the plaintiff, a state prisoner, was suffering from a mental illness or defect that could not be treated at the prison facility, so they transferred him to a mental health hospital for treatment under a state statute allowing the transfer of such prisoners. *Vitek*, 445 U.S. at 484. The plaintiff claimed

9

> that the prison officials violated his right to due process because their determination of illness was not accompanied by adequate notice or a hearing. *Id.* at 485. The Court agreed, finding that state law and practice gave the plaintiff an objective expectation that he would not be transferred unless a proper determination was made regarding his mental state. *Id.* at 489–90. Even apart from state law and practice, however, the plaintiff was entitled to due-process because the consequences that he suffered were "qualitatively different from the punishment characteristically suffered by a person convicted of crime." *Id.* at 493. The Court noted that "involuntary confinement to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual." *Id*. Confinement to a "mental hospital" for treatment involves more than merely a loss of freedom; it also has a stigmatizing effect on the treated individual. *Id.* at 492. The Court concluded that, while "the restrictions on the prisoner's freedom of action at the [hospital] by themselves might not constitute the deprivation of a liberty interest . . . the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." *Id.* at 494.

*Catanzaro*, 848 F. Supp. 2d at 794. This Court determined that "requiring a convicted sex offender to undergo rehabilitative treatment related to that offense is wholly different than requiring a prisoner to undergo involuntary health treatment." *Id*. at 795. This Court recognized a distinction between imposing sex-offender classifications and requiring sex-offender treatment of those convicted of sex offenses and imposing that classification and requiring such treatment of those who were not. *Id*. at 796. The United States Court of Appeals for the Sixth Circuit subsequently acknowledged the existence of that line as well, but drew the line at a slightly different place. In *Harper v. Arkesteyn*, No. 19-1928, 2020 WL 4877518 (6th Cir. Apr. 28, 2020), the Sixth Circuit reversed the district court's dismissal of a claim like Petitioner's where the plaintiff had "neither been convicted of a sex crime nor accused of any sexual wrongdoing while incarcerated." *Harper*, 2020 WL 4877518, at *1.

This is not the first time that Petitioner has claimed that his procedural due process rights were violated by his classification as a sex offender and requirement to complete sex offender treatment before being paroled. In 2020, Petitioner filed a suit pursuant to 42 U.S.C. § 1983

10

alleging that "he was denied due process because the parole board [wa]s requiring him to complete the MSOP even though the CSC-IV charge was dismissed." *See Bridges VI*, 2020 WL 7021563, at *2.

This Court noted that Petitioner's criminal history included sex offenses, indicating that in 2004, he pled *nolo contendere* to a charge of assault with intent to commit a felony in exchange for dismissal of home invasion and second-degree criminal sexual conduct (CSC-II) charges. *Id.* "Although the charge of CSC-II was dismissed, the factual basis for that charge remained relevant because it was the 'felony' [Petitioner] intended to commit when he assaulted the victim." *Id.* The Court concluded that Petitioner's position was more like the plaintiff in *Catanzaro* rather than *Harper* because Petitioner "ha[d] committed a sexual offense: assault with the intent to commit a felony—CSC-II." *Id.* at *5. The Court found that Petitioner alleged "nothing to support the inference that he did not receive the process he was due" because he "enjoyed all of the necessary procedural protections when he entered his plea." *Id.* Petitioner filed multiple motions for reconsideration, and this Court acknowledged that it had overlooked the fact that Bridges' conviction had later been amended to third-degree home invasion. *See* Order, *Bridges VI*, No. 1:20-cv-1138 (W.D. Mich. Feb. 5, 2021) (ECF No. 15). The Court, however, concluded that Petitioner had still pled guilty to a sexual offense because the crime underlying the home invasion charge was still the sexual assault. *Id.*

The Sixth Circuit affirmed this Court's dismissal of Petitioner's § 1983 suit, stating:

We have suggested—though not held—that a prisoner may have a liberty interest in not being labelled a sex offender and therefore is entitled to adequate process due to the stigma attached to such a classification. *See Harper v. Arkesteyn*, No. 19-1928, 2020 WL 4877518, at *3 (6th Cir. Apr. 28, 2020) (order); *see also Renchenski v. Williams*, 622 F.3d 315, 326 (3d Cir. 2010); *Kirby v. Siegelman*, 195 F.3d 1285, 1291–92 (11th Cir. 1999) (per curiam); *Neal v. Shimoda*, 131 F.3d 818, 829–30 (9th Cir. 1997).

11

> Therefore, assuming, without deciding that a liberty interest is at stake, we conclude that Bridges nonetheless did not adequately plead a due process violation because he has previously been convicted of a sex offense—third-degree home invasion. Third-degree home invasion entails:
>
>> Break[ing] and enter[ing] a dwelling with intent to commit a misdemeanor in the dwelling, enter[ing] a dwelling without permission with intent to commit a misdemeanor in the dwelling, or break[ing] and enter[ing] a dwelling or **enter[ing] a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commit[ing] a misdemeanor.**
>
> Mich. Comp. Laws § 750.110a(4)(a) (emphasis added). The underlying conduct is therefore an element of the offense that comprised the sexual assault upon the unconscious victim in which Bridges placed his hand down her pants and kissed her face. This factual basis was not contested by Bridges during his 2004 plea. Requiring an offender convicted of a sex offense to participate in sex-offender treatment as a prerequisite for parole does not require additional due process protections beyond the prior conviction. *See Meza v. Livingston*, 607 F.3d 392, 401 (5th Cir. 2010); *Jennings v. Owens*, 602 F.3d 652, 659 (5th Cir. 2010); *Neal*, 131 F.3d at 831.

6th Cir. Order, *Bridges VI* (ECF No. 18).

Petitioner filed a § 2254 petition raising his due process arguments around the same time as his § 1983 suit. *See generally Bridges V*. This Court dismissed that petition on November 25, 2020, concluding that Petitioner has failed to raise a meritorious federal claim. *See Bridges V*, 2020 WL 6937789, at *1. In that opinion, the Court noted that in 2004, Petitioner entered a plea of *nolo contendere* in the Ingham County Circuit Court to a charge of assault with intent to commit a felony. *See id.* at *3. In exchange for that plea, the State dropped charges of home invasion and second-degree criminal sexual conduct (CSC-II). *Id.* As the Court noted:

> Although the charge of CSC-II was dismissed, the factual basis for that charge remained relevant because it was the "felony" Petitioner intended to commit when he assaulted the victim. The factual basis for the plea was taken from the preliminary examination of the victim and her housemates, Petitioner claimed he could not remember because he was too drunk. The others, however, witnessed Petitioner with his hand down the pants of a woman passed out drunk on the living room couch as he kissed her.

*Id.* (citations omitted). Based upon that fact, the Court concluded:

12

> Despite Petitioner's protests to the contrary, he has committed a sexual offense: assault with the intent to commit a felony—CSC-II. He enjoyed all of the necessary procedural protections when he entered his plea. Thus, to the extent Plaintiff is entitled to due process protection before being classified a "sex offender," he alleges nothing to support the inference that he did not receive the process he was due.
>
> The MSOP is designed to offer treatment to "offenders with current sex offense convictions and histories of sexual offending." https://www.michigan.gov/corrections/0,4551,7-119-68854_68856_74016---,00.html (visited November 25, 2020). Even if Petitioner is not presently serving a sentence for a current sex offense conviction, he has a history of sexual offending. The requirement that he participate in the MSOP suggests nothing more.

*Id.* at *5. The Court also rejected any substantive due process argument raised by Petitioner, noting that requiring Petitioner to complete sex offender treatment for parole purposes did not shock the conscience. *Id.* at *5–6.

Here, Petitioner has presented the same arguments that he raised, and that this Court rejected, in 2020. He provides no authority, and the Court has not located any, suggesting that between 2020 and now, the federal courts have concluded that an inmate has a due process right to avoid being labeled as a sex offender and to avoid completing sex offender treatment in order to be eligible for parole. Accordingly, in light of the foregoing, Petitioner has failed to raise a meritorious federal ground for relief, and his § 2254 petition will be dismissed.

## III.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth

by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, for the same reasons the Court finds that Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court also concludes that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   May 21, 2025                                    /s/ *Maarten Vermaat*
                                                         Maarten Vermaat
                                                         United States Magistrate Judge